AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 24 2021

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black Puma backpack currently located at the FBI office in Gallup, New Mexico

Case No. 21-MR-1226

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the _____ District of ___ New Mexico ___, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §1153 | Offenses committed within Indian Country |
| 18 USC §1111 | Murder |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Justin Tennyson, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically sworn and electronically signed *(specify reliable electronic means)*.

Date: August 24, 2021

*Judge's signature*

City and state: Farmington, New Mexico

B. Paul Briones, US Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT

I, Justin Tennyson, being duly sworn, state as follows:

## Introduction and Agent Background

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since July 2014. I am currently assigned to the Albuquerque Field Office, Gallup Resident Agency. My primary duties as a Special Agent with the FBI include investigating crimes occurring in Indian Country. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state and federal law enforcement agencies. I have training and experience in enforcing federal laws and tracking suspects and fugitives, including locating cell phones suspected of being used by suspects and fugitives in furtherance of criminal activity. As a Federal Agent, I am authorized to investigate violations of the laws of the United States and have authority to execute arrest and search warrants issued under the authority of the United States.

2. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, tribal, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to law enforcement officers. Law enforcement officers are those federal, state, tribal and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from interviews with cooperating citizen witnesses, whose reliability is established separately herein.

3.      Based on my training, experience, and the facts a set forth in this affidavit, I believe there is probable cause that violations of United States Code Title 18 §1153 – Offenses committed within Indian country and §1111 – Murder were committed by JOSIAH ALAN SMITH, year of birth (y.o.b.) 1993. In this regard, the following information was developed from an investigation conducted by your affiant and/or communicated to him by other sworn Law Enforcement Officers regarding the homicide of D.D. (hereinafter referred to as John Doe or Doe), y.o.b. 1992. SMITH and Doe are enrolled members of the Navajo Nation and the crime occurred within the exterior boundaries of the Navajo Nation Indian Reservation. There is also probable cause to search for the evidence items described in Attachment B associated with the item described in Attachment A for evidence, fruits, and instrumentalities of these crimes.

4.      Because this affidavit is submitted for the limited purpose of securing authorization for a search and seizure warrant, I have not included each and every fact known to me concerning this investigation. This affidavit is intended to show that there is sufficient probable cause for the requested search and seizure warrant.

## PROBABLE CAUSE

5.      Your affiant was contacted on May 17, 2021 by a Navajo Department of Criminal Investigations Criminal Investigator (CI) regarding a deceased male, identified as Doe, who had received a gunshot wound to the back. The location of the incident was at Doe's girlfriend's residence, located in Church Rock, New Mexico. On May 17, 2021, Doe was pronounced deceased by the Office of the Medical Investigator (OMI). A search of the exterior of the residence revealed (2) 9mm bullet casings near the open south bedroom window and (1) 9mm bullet casing behind the residence. The south bedroom had a television that had a bullet hole through it and the bullet

appeared to have entered the wall that was behind it. Doe had a single gunshot wound below the left scapula.

6. On May 17, 2021, D.P., year of birth 1962, hereafter Witness 1, was interviewed by law enforcement. Witness 1 stated she had been staying at Doe's residence with her daughter, S.P., year of birth 1991, hereafter Witness 2, and had been there for several weeks. Earlier in the day, SMITH and an unidentified male came to the residence. SMITH, the unidentified male, and J.Y., year of birth 1973, hereafter Witness 3, went out the back door of the residence with a gun. Witness 1 heard (1) gun shot.

7. Witness 1 heard SMITH tell John Doe that he was, "going to get you next time." Witness 1 told SMITH to leave it alone and to leave. Witness 1 also told John Doe to leave SMITH alone and not to bother him.

8. SMITH walked away and Witness 1 then went into the restroom and heard (2) gunshots. Witness 1 ran out of the restroom and went into the south bedroom. Witness 1 saw SMITH standing outside the bedroom window pointing a gun into the bedroom. Witness 1 jumped on the bed and stood in front of SMITH while he was pointing the gun into the bedroom. Witness 1 told SMITH to leave and SMITH then stated, "No, No, No," and left in a hurry. Witness 1 described the gun as a small gray hand gun with a long barrel.

9. Witness 1 turned around and saw Doe laying on the floor.

10. On May 17, 2021, Witness 2 was interviewed by law enforcement. Witness 2 stated that she had been in a relationship with John Doe and had been staying at the residence for the past (2) years. Witness 2 had been drinking alcohol earlier in the day with others and SMITH had showed up with Gilbert Last Name Unknown (LNU) to her residence. Witness 2 was later shown

a picture of Gilbert David JOHN, Jr., year of birth 1988, hereinafter JOHN, and Witness 2 confirmed that was the same individual.

11.  SMITH was looking for Witness 3 and D.H, year of birth 1967. SMITH, Witness 3, and D.H. are involved in methamphetamine. SMITH was told that D.H. wasn't there and that Witness 3 had left out of nowhere. Witness 2 was in the living room and heard (2) gunshots. Witness 2 went to her bedroom, which is the south bedroom, and saw Witness 1 standing there. Witness 1 said, "babe" and Witness 2 saw John Doe laying on the floor in front of the television. Witness 2 tried to resuscitate John Doe but he didn't make it. Witness 1 pulled Witness 2 away from John Doe and told her that he was gone.

12.  Witness 2 stated that Witness 1 told her that Witness 3 had told SMITH that Doe had beat up her boyfriend, J.J, year of birth 1987, yesterday. J.J. and John Doe and gotten into a fight because Witness 3 tried to "mess around" with John Doe. J.J. and SMITH were friends and Witness 2 thought that was why SMITH might have shot John Doe.

13.  Witness 2 had grown up with SMITH and had dated him several years ago. Witness 2 has known SMITH to sell methamphetamine. Witness 2 has observed SMITH with a gun in the past but had not seen it on May 17, 2021.

14.  On May 17, 2021, Witness 3 was interviewed by law enforcement. Witness 3 stated that she has been living at the residence with her boyfriend, J.J. At about 3:00 p.m., "Jojo" and an unidentified male came to the residence. Witness 3 did not know Jojo's real name. They smoked methamphetamine with Jojo and the unidentified male. They were also drinking alcohol. Jojo had a "long gun" and they went outside to shoot it. Witness 3 had never shot a gun before and had asked to shoot it. Witness 3 shot the gun once and they went back inside the residence. Jojo asked

4

where J.J. was and Witness 3 told him that he had called the ambulance for himself and was transported to the hospital.

15. Witness 3 stated that Witness 2 had got mad at her and tried to fight her. Witness 3 then left the residence and walked down the road. When Witness 3 returned to the residence, she was informed that John Doe was dead.

16. On May 17, 2021, J.J. was interviewed by law enforcement. J.J. stated he is the boyfriend of Witness 3. J.J. woke up that morning and his head was all bloody and he was in pain. J.J. called an ambulance and he was transported to the Gallup Indian Medical Center (GIMC) emergency room. When J.J. returned to the residence, John Doe had been killed.

17. J.J. stated that he had gotten into a fight with John Doe. This was the first time that they had ever fought. J.J. didn't know what had caused the fight as J.J. was really drunk at the time. J.J. stated he knows "Jojo" as he will come out there and deal drugs. Jojo usually brings guns out to the residence and he tries to sell them to J.J. J.J. had recently seen Jojo with a rifle and a handgun.

18. Location information was obtained for the cellular telephone numbers, or cellular devices, subscribed to and utilized by SMITH and JOHN during the time of the homicide of Doe from Cellular One of Northeast Arizona (see Case Numbers 21-MR-784 and 21-MR-1090 respectively). In addition, location data was obtained from Google, Inc. for the cellular number associated with the Google account utilized by SMITH, joesmith60160@gmail.com (see Case Number 21-MR-891). Preliminary mobile device geolocation analysis indicates that both of the cellular devices owned by SMITH and JOHN were in the general area consistent with the crime scene at the time of the crime.

5

19. On June 03, 2021, D.H. was interviewed by law enforcement. D.H. stated that he was not around when John Doe was killed. D.H. was told by Witness 2 that "Josiah" had shot John Doe. D.H. was told that SMITH was looking for him that day as they sometimes would hang out.

20. D.H. stated that SMITH's father and brother had recently been out to the residence as they were looking for SMITH. They wanted SMITH to turn himself in to authorities. SMITH's mother was really worried about him. SMITH's father didn't want him to run from the police because if SMITH had guns he may end up getting shot too. D.H. didn't believe that SMITH's family had found him yet. SMITH always told D.H. that he was buying guns and had guns but D.H. never saw him with any. SMITH's father told D.H. that SMITH had bought a gun not too long ago.

21. On June 03, 2021, your affiant went to the pawn shop located in the T & R Market, located at 667 Highway 491, Gallup, New Mexico, and spoke with the manager and owner. They provided your affiant with a copy of the paperwork showing where SMITH had purchased a Diamondback Firearms DB9R 9mm rifle, serial number DB9M04631 on April 07, 2021. On the Firearms Transaction Record document, the employee had failed to get SMITH's signature but did receive SMITH's signature on the T & R Pawn New Firearm Owners - Manual Delivery Certification form. The owner stated that SMITH did purchase the firearm and received it. The owner attempted to retrieve video footage of the transaction but it was no longer stored.

22. Law enforcement interviewed a friend of SMITH, S.B., year of birth 1984, on June 10, 2021. S.B. stated that SMITH told him that he was aware that law enforcement was looking for him. S.B. was again interviewed on June 28, 2021 and he stated that he had given the business card with the affiant's contact information to SMITH a few days after the affiant was at his house on June 10, 2021. SMITH didn't tell him whether or not he was going to contact law enforcement.

6

23. On June 11, 2021, an arrest warrant was issued via a Criminal Complaint in the District of New Mexico charging SMITH with violation of United States Code Title 18 §1153 – Offenses committed within Indian country and §1111 – Murder.

24. On June 13, 2021, a mirandized interview of JOHN was conducted by law enforcement at the McKinley Adult Detention Center in Gallup, New Mexico where JOHN was incarcerated on unrelated charges. JOHN stated he was with SMITH on the day of the shooting of Doe but he didn't know at the time that SMITH had shot Doe. They were both drinking vodka and SMITH had smoked a little bit of methamphetamine. SMITH had a Diamondback 9mm rifle on the day of the shooting and SMITH owns around three (3) – five (5) firearms. At the time of the alleged shooting, JOHN stated he was outside of the residence and was getting their brown truck unstuck in preparation to leave. SMITH then came to the truck and JOHN drove them both away from the residence. JOHN did not recall where they had gone after the shooting had taken place.

25. JOHN stated the day after they had left the residence, SMITH told him that he had shot Doe. SMITH didn't say how many rounds he had fired or why he had shot Doe. JOHN didn't ask SMITH many questions about it. JOHN stated he cares for SMITH but he didn't think that SMITH should have shot Doe.

26. During the week of July 22, 2021, the Investigative Publicity team at FBI Headquarters (FBIHQ) published a Wanted By the FBI poster for SMITH. The information was published on the FBI's official website as well as on local media outlets.

27. On August 11, 2021 a mirandized interview of A.Y., year of birth 1994, was conducted by law enforcement at the McKinley Adult Detention Center in Gallup, New Mexico where A.Y. was incarcerated on unrelated charges. A.Y. stated that SMITH "did it" in reference

7

to SMITH being charged with murder as she had heard SMITH bragging about it. A.Y. stated that SMITH's mother was helping to hide him. A.Y. has seen SMITH with two (2) different pistols – a black .45 caliber pistol with a drum clip and the other pistol had a gray handle.

28. On August 20, 2021, SMITH's mother, S.S., year of birth 1965, was interviewed by law enforcement. S.S. stated that she had last spoke to SMITH on July 23, 2021 when there was a media release on television and in the newspapers about SMITH being wanted by the FBI. SMITH told S.S. that he was displeased about how the FBI had arrested his brother in the past and how his family was treated during the process. SMITH allegedly told S.S. that he was afraid of the FBI because of how his brother was handled. S.S. and her husband had arranged for SMITH to meet with an attorney but SMITH didn't trust the attorney as SMITH thought that he would turn SMITH in.

29. S.S. stated that from May 17, 2021 through August 20, 2021, she had had (2) contacts with SMITH. S.S. did not have any information on who SMITH was currently with or where he was staying. SMITH denied knowing if SMITH had any friends or girlfriends by the name of "Jessica" or "Amber". S.S. had not given SMITH any money or other financial benefits in the prior (3) months.

30. On August 21, 2021, law enforcement went to the residence located at 900 Draco Street, Gamerco, New Mexico 87317 and spoke to a resident, S.D., year of birth 1977. S.D. was asked if JOSIAH SMITH was present in the shed behind the residence and S.D. stated that he was. S.D. provided verbal consent for law enforcement to search it. SMITH was located in the shed and was arrested without incident.

31. A search of the shed at 900 Draco Street, Gamerco, New Mexico was conducted by law enforcement to look for other evidentiary items related to the homicide of John Doe. The

items that were seized included the following: a black Puma backpack that S.D. identified as belonging to SMITH, (3) Samsung Phones, (2) Amazon tablets, and a Samsung camera. The black Puma backpack was within reach of SMITH when he was arrested by law enforcement. There were five syringes, latex gloves with a black substance on them, a rubber band that may have been to used to act as a tourniquet, and other miscellaneous items located in the pockets of SMITH during a search incident to arrest. SMITH also had a wallet that contained a New Mexico identification card belonging to another individual (SHELDON CAYADITTO, year of birth 1996), a Bernalillo County MDC Inmate identification card with the name LEVI SMITH with SMITH's photograph and a booking date of 6/2/2021, a SIM card eject tool used to swap SIM cards in cellular devices, and other miscellaneous items. No firearms were located during the search of the shed. SMITH requested a lawyer when attempted to be interviewed by law enforcement.

32. Based on my training and experience, offenders often keep weapons, to include firearms, which have been used in violent crimes at their residence, on their person, or in other containers or possessions, such as backpacks. Additionally, based on your affiant's training and experience, I also know that those involved in committing a crime and then fleeing the scene may use cellular devices to aid in their escape, prevent their apprehension, or communicate information related to the crime they committed. This includes but is not limited to text message communications, telephone calls, and location information. Those involved in violent crimes will also take photographs with the weapons or firearms they've used in crimes either unwittingly prior to the crime or after it has occurred. These photographs are often stored on electronic devices.

33. The backpack may contain evidence of the murder that was committed including the firearm that was used to shoot John Doe as well as other evidence of the homicide.

9

Additionally, SMITH fled from the crime scene and has been using various telephone numbers and potentially different communication devices to communicate with others since the crime has occurred. The contents of the backpack may provide further evidence that SMITH has been evading law enforcement. In addition, witnesses have confirmed that SMITH uses and deals controlled substances. The syringes that were found on SMITH after his arrest on August 21, 2021 were believed to be used to inject controlled substances. There may be additional controlled substances in the backpack that could corroborate statements made by witnesses involving SMITH's involvement in illegal drugs on the day of the homicide.

34. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## JURISDICTIONAL STATEMENT

35. The location of where John Doe was murdered is within the boundaries of the Navajo Indian Reservation, which is Indian Country in the District of New Mexico. Law enforcement officers have obtained Certificate of Indian Blood (CIB) records from the Navajo Nation that confirm SMITH and Doe are enrolled members of the Navajo Nation.

## CONCLUSION

36. Based upon the information contained herein, your affiant believes that there is probable cause to obtain a search and seizure warrant to search the black Puma backpack that was seized by law enforcement on August 21, 2021. It is believed that the backpack may contain evidence, fruits, and/or instrumentalities of, or property intended for use in violations of United States Code Title 18 §1153 – Offenses committed within Indian country and 1111 – Murder.

## AUTHORIZATION REQUEST

37. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

38. Assistant United States Attorney Elisa Dimas has reviewed and approved this affidavit in support of an application for a search warrant.

Respectfully submitted,

_____
Justin Tennyson
Special Agent
Federal Bureau of Investigation

Telephonically sworn and electronically signed before me this 24th day of August 2021.

_____
HON. B. Paul Briones
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

### Property to be Searched

This warrant applies to a black Puma backpack currently in storage at the FBI office in Gallup, New Mexico.

## ATTACHMENT B

### Particular Things to be Seized

As a result of this investigation, there is probable cause to believe that contained within the black Puma backpack that law enforcement seized on August 21, 2021, there is evidence related to 18 U.S.C §§ 1153 – Offenses committed within Indian country and §1111 – Murder. The search warrant authorizes the collection of the following:

1. Firearms, ammunition, magazines, holsters, and items used to store firearms
2. Articles of property tending to establish the identity of the person in control of the backpack
3. Cellular telephones and other digital devices, such as computers, laptops, tablets, or similar electronic storage devices
4. Controlled substances, including heroin, fentanyl, and methamphetamine; drug paraphernalia, scales, plastic bags, and other packaging materials